IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| HEATHER MALIN; and MARIYA MCNEESE,<br><br>        Plaintiffs,<br><br>    vs.<br><br>OSPREY UNDERWRITING AGENCY LIMITED, a foreign unincorporated entity and/or corporation; and CERTAIN UNDERWRITERS AT LLOYD'S, a foreign unincorporated entity and/or corporation,<br><br>        Defendants. | Case No. 3-20-CV-00119-JWS<br><br>**ORDER ON MOTION TO DISMISS OR STAY AND COMPEL ARBITRATION**<br>**(Docket 40)** |

## I. MOTION PRESENTED

At docket 40, Defendants Osprey Underwriting Agency Limited, and its certain underwriters ("Osprey Underwriting"), and Certain Underwriters at Lloyd's ("Lloyd's"; collectively "Defendants") move the court to dismiss or stay this matter and compel Plaintiffs Heather Malin and Mariya McNeese ("Plaintiffs") to pursue their claims against Defendants through arbitration in London, England, in accordance with the terms of an arbitration clause in the applicable insurance policy. Plaintiffs oppose

the motion at docket 50. Defendants reply at docket 53. Oral argument was not requested and would not be of assistance to the court.

## II. BACKGROUND

Underlying Plaintiffs' complaint is an incident that occurred aboard the F/V AMERICAN BEAUTY on August 6, 2015, in which the captain of the vessel allegedly assaulted Plaintiffs, who were crewmembers aboard the vessel. The vessel was owned by F/V AMERICAN BEAUTY, LLC ("American Beauty"). American Beauty was an assured under a maritime protection and indemnity policy (the "Policy") obtained through the London marine insurance market. The Policy was underwritten by Osprey Underwriting and brokered by Wells Fargo Insurance Services USA, with Osprey Underwriting reinsuring the risk through Lloyds.

In 2016 Plaintiffs filed suit against American Beauty, the vessel's captain, and others, raising a claim under the Jones Act, 46 U.S.C. § 30104, claims for negligence and intentional tortious acts, and a claim under general maritime law for payment of maintenance and cure benefits. Defendants refused to defend the action or indemnify American Beauty under the Policy. The parties settled the underlying case, stipulating to an entry of judgment in favor of Plaintiffs solely against American Beauty. American Beauty and the other defendants also agreed to assign Plaintiffs any claims they might have against Osprey and Lloyd's related to coverage under the Policy.

Plaintiffs subsequently filed this lawsuit, alleging Defendants wrongfully denied coverage for their claims against American Beauty in the underlying

*Malin, et al. v. Osprey Underwriting Agency Ltd.*     Case No. 3:20-cv-00119-JWS
Order on Motion to Dismiss or Stay and Compel Arbitration (Docket 40)     Page 2
Case 3:20-cv-00119-JWS    Document 54    Filed 03/30/22    Page 2 of 13

lawsuit. They assert a claim for breach of contract and a claim for bad faith based upon Defendants' failure to defend and indemnify the defendants in the underlying civil action.

Despite the fact that the Policy contains a "Osprey Law and Practice Clause" requiring arbitration in London, England, and the application of English law, Plaintiff brought suit in this court. They rely on the "Service of Suit Clause" in the Policy:

> It is agreed that in the event of the failure of the Underwriters severally subscribing this insurance (the Underwriters) to pay any amount claimed to be due hereunder, the Underwriters, at the request of the Assured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.[1]

Plaintiffs argue the parties' inclusion of the Service of Suit Clause at least creates an ambiguity that should be resolved in favor of judicial resolution, or, alternatively, that the foreign forum and choice of law aspect of the arbitration provision renders is it unenforceable because it unreasonably deprives Plaintiffs of their bad faith claim and remedies and because it has the effect of waiving their statutory rights.

### III. DISCUSSION

Arbitration agreements between parties of different countries are subject to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards

---

[1] Dockets 41-9 at 1; 41-4 at 26.

*Malin, et al. v. Osprey Underwriting Agency Ltd.* Case No. 3:20-cv-00119-JWS
Order on Motion to Dismiss or Stay and Compel Arbitration (Docket 40) Page 2
Case 3:20-cv-00119-JWS Document 54 Filed 03/30/22 Page 3 of 13

(the "Convention").[2] The Convention requires signatory nations, such as the United States, to recognize international arbitration agreements and to recognize and enforce arbitral awards made in other contracting countries.[3] The United States implemented the Convention through the enactment of Chapter 2 of the Federal Arbitration Act ("FAA").[4] Any agreement covered under the Convention is subject to the FAA's general provisions and its "liberal federal policy favoring arbitration."[5] Indeed, the Supreme Court has noted that "the emphatic federal policy in favor of arbitral dispute resolution . . . applies with special force in the field of international commerce."[6] Provided that a court is satisfied with the arbitration agreement's formation, it is required to enforce arbitration on issues covered under that agreement.[7]

For a motion to compel arbitration based upon an international agreement, the court conducts a "very limited inquiry."[8] This inquiry consists of four factors: (1) there must be an agreement to arbitrate in writing; (2) the agreement must provide for arbitration in the territory of a signatory of the Convention; (3) the agreement must arise out of legal relationship, whether contractual or not, which is considered commercial (including a transaction, contract or agreement described in the

---

[2] The United Nations Conventions on Recognition and Enforcement of Foreign Arbitral Awards, June 20, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997 (entered into force with respect to the United States Dec. 29, 1970) (the "Convention").
[3] *Id.*, art. II(1).
[4] 9 U.S.C. §§ 201–208.
[5] 9 U.S.C. § 208; *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 825 (9th Cir. 2019) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).
[6] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).
[7] 9 U.S.C. § 4.
[8] *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005).

*Malin, et al. v. Osprey Underwriting Agency Ltd.*     Case No. 3:20-cv-00119-JWS
Order on Motion to Dismiss or Stay and Compel Arbitration (Docket 40)     Page 2
Case 3:20-cv-00119-JWS    Document 54    Filed 03/30/22    Page 4 of 13

Section 2 of the FAA, 9 U.S.C. § 2); and (4) one of the parties to the agreement must not be a U.S. citizen, or the commercial relationship underpinning the agreement must have some reasonable relation with a foreign state.[9] If these four requirements are satisfied, the Convention applies and arbitration must be enforced. The court can deny arbitration only by finding the agreement "null and void, inoperative or incapable of being performed."[10] That is to say, at the arbitration-enforcement stage, the Convention only recognizes a limited number of defenses—ones that "can be applied neutrally on an international scale."[11]

Here, there is no dispute as to three of the factors requiring the application of the Convention and its mandate to enforce the agreement. The Policy is commercial in nature;[12] there is an arbitration provision in the Policy that provides for arbitration in London, England; and Defendants are not U.S. citizens. As to the threshold issue of whether there is a written agreement between the parties, Plaintiffs do not dispute that there is a written insurance agreement between the assureds and Defendants, nor do they dispute its application to them here. Instead, Plaintiffs assert that the scope of the arbitration agreement in the Osprey Law and Practice Clause is narrowed by Service of Suit Clause to exclude this type of case, where Defendants are

---

[9] *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 654–55 (9th Cir. 2009) (quoting *Bautista*, 396 F.3d at 1294 n.7).
[10] Convention, art. II(3); *Balen*, 583 F.3d at 654.
[11] *Bautista*, 396 F.3d at 1302 (quoting *DiMercurio v. Sphere Drake Ins. PLC*, 202 F.3d 71, 79 (1st Cir. 2000)).
[12] A marine insurance policy is a maritime contract covered under Section 2 of the FAA. *Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1057–61 (9th Cir. 2018).

*Malin, et al. v. Osprey Underwriting Agency Ltd.*  Case No. 3:20-cv-00119-JWS
Order on Motion to Dismiss or Stay and Compel Arbitration (Docket 40)  Page 2
Case 3:20-cv-00119-JWS   Document 54   Filed 03/30/22   Page 5 of 13

alleged to have failed to pay amounts due under the Policy, or that the conflict between the two clauses renders arbitration unenforceable as to their claims against Defendants.

The court finds Plaintiffs' argument unavailing. The Service of Suit Clause does not vitiate the arbitration requirement, and there is no conflict in the Policy between the Osprey Law and Practice Clause and the Service of Suit Clause. The plain terms of the Osprey Law and Practice Clause makes this clear:

> Notwithstanding anything else to the contrary, this insurance is subject to English law and practice and any dispute under or in connection with this insurance is to be referred to Arbitration in London, . . . . In the event of a conflict between this clause and any other provision of this insurance, this clause shall prevail and the right of either part to commence proceedings before any Court or Tribunal in any other jurisdiction shall be limited to the process of enforcement of any award hereunder.[13]

By its own terms, this provision prevails over any allegedly conflicting terms. Indeed, the Service of Suit Clause itself makes clear that it is "[s]ubject, in all respects, to the Osprey Law and Practice Clause . . . ."[14] Taken together, it is clear that the Osprey Law and Practice Clause and the Service of Suit Clause work harmoniously, with the purpose of the Service of Suit Clause being to "provide[ ] a means to compel arbitration or enforce any arbitration award."[15]

Other courts have found as much when analyzing agreements with similar service of suit provisions: "It is well-established that such service of suit

---

[13] Dockets 41-9 at 3; 41-4 at 28.
[14] Dockets 41-9 at 1; 41-4 at 26.
[15] See *Security Life Ins. Co. v. Hannover Life Reassurance Co. of Am.*, 167 F. Supp. 2d 1086, 1089 (D. Minn. 2001).

*Malin, et al. v. Osprey Underwriting Agency Ltd.*  Case No. 3:20-cv-00119-JWS
Order on Motion to Dismiss or Stay and Compel Arbitration (Docket 40)  Page 2
Case 3:20-cv-00119-JWS   Document 54   Filed 03/30/22   Page 6 of 13

clauses do not abridge an agreement to arbitrate all disputes arising out of a relationship."[16] These courts recognize that the purpose of service of suit clauses is to provide a judicial forum in which a party may enforce arbitration or an arbitration award.[17] The plain language in the Policy makes this intent clear here, as it expressly states that any right to seek judicial review is "limited to the process of enforcement of any award" granted through the arbitration process.[18] This language, along with the language in both clauses stating that the Osprey Law and Practice Clause prevails in all respects, is sufficient to distinguish the cases relied upon by Plaintiffs.

Another section in the Policy supports a finding that the parties agreed to arbitration of the type of dispute presented here. The "Choice of Law and Jurisdiction" section states that "[a]ny dispute concerning the interpretation of this Policy shall be governed by the Law and Jurisdiction of England and Wales in accordance with the Osprey Law [and] Practice Clause."[19] Under this section, a dispute which turns what the Policy required of Defendants with regard to the

---

[16] *Id.* at 1088 (citing supportive cases).
[17] *Id.* at 1088–89; *see also Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 554 (3d Cir. 2009) ("But service-of-suit clauses do not negate accompanying arbitration clauses; indeed, they may complement arbitration clauses by establishing a judicial forum in which a party may enforce arbitration); *Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*, 79 F.3d 295 (2d Cir. 1996) (noting that a similar clause—where the insurer agreed to appear in federal court with regard to any civil action to recover for any claim payable or alleged to be payable and where the clause stated that except for jurisdiction it did not otherwise change other contractual or substantive rights—did not vitiate the arbitration provision, but rather resolved the issue of personal jurisdiction of a foreign company in the event of an action to enforce an arbitration award).
[18] Dockets 41-9 at 3; 41-4 at 28.
[19] Dockets 41-8 at 2; 41-4 at 2.

*Malin, et al. v. Osprey Underwriting Agency Ltd.*  Case No. 3:20-cv-00119-JWS
Order on Motion to Dismiss or Stay and Compel Arbitration (Docket 40)  Page 2
Case 3:20-cv-00119-JWS   Document 54   Filed 03/30/22   Page 7 of 13

underlying lawsuit is subject to English law and the arbitration process outlined in the Osprey Law and Practice Clause.

Even if there were some ambiguities created by the inclusion of the Service of Suit Clause in the Policy, under the general principles of the FAA, any ambiguities related to the scope of arbitrable issues should be resolved in favor of arbitration.[20] Indeed, arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."[21] No such positive assurances can be made here.

Plaintiffs alternatively argue that the court should find the arbitration provision unenforceable to the extent it requires the application of English law in an English forum. They argue enforcement of English arbitration would deprive them of their bad faith claim and its remedies, as well as their underlying statutory rights. Again, Plaintiffs' argument is unavailing. As noted above, once the court is satisfied that there is an arbitration agreement that falls under the Convention, the court, pursuant to the Convention, must order arbitration unless the agreement is "null and void, inoperative or incapable of being performed."[22] The "null and void" language "limits the bases upon which an international arbitration agreement may be challenged

---

[20] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").
[21] *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (quoting *AT&T Techs., Inc. v. Commc'ns. Workers*, 475 U.S. 643, 650 (1986)).
[22] Convention, art. 11(3); *Balen*, 583 F.3d at 654–55.

*Malin, et al. v. Osprey Underwriting Agency Ltd.*  Case No. 3:20-cv-00119-JWS
Order on Motion to Dismiss or Stay and Compel Arbitration (Docket 40)  Page 2
Case 3:20-cv-00119-JWS   Document 54   Filed 03/30/22   Page 8 of 13

to standard breach-of-contract defenses" such as fraud, mistake, duress, and waiver.[23] Plaintiffs raise no such defenses here.

Plaintiffs instead assert that enforcement would be against public policy. While other courts have stressed the narrow scope of the Convention's "null and void" language, excluding any challenge based on public policy grounds at the arbitration-enforcement stage,[24] the Ninth Circuit has entertained the possibility of such a defense to arbitration enforcement. In *Balen*, the plaintiff, a seaman, sought to bring a claim under the Seaman's Wage Act, 46 U.S.C. § 10313, against a maritime employer. He argued that foreign arbitration would be against public policy because it would eliminate components of his statutorily protected wages and effectively void Congress's intent to ensure proper treatment of seamen. The court acknowledged the possibility that an international arbitration agreement could be deemed null and void if the plaintiff could show that "the public policy regarding the proper treatment of seafarers is stronger than the public policy favoring the arbitration."[25] Such a showing would at least require evidence that international arbitration would nullify statutory rights Congress has provided seafarers.[26] The court ultimately enforced arbitration,

---

[23] *Bautista*, 396 F.3d at 1202.
[24] *See Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1277 (11th Cir. 2011) (noting that a narrow interpretation of the "null and void" clause in the Convention "is in complete accord with the prevailing authority in other circuits").
[25] *Balen*, 583 F.3d at 654.
[26] *Id.* ("Balen has not established what statutory remedy or procedure he could pursue in the United States that he could not pursue in the Philippines."); *see also Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1159 (9th Cir. 2008) (enforcing foreign arbitration between a plaintiff seaman and maritime employer "in the absence of any evidence that international arbitration would nullify any of the statutory rights Congress has conferred on seafarers.").

*Malin, et al. v. Osprey Underwriting Agency Ltd.*  Case No. 3:20-cv-00119-JWS
Order on Motion to Dismiss or Stay and Compel Arbitration (Docket 40)  Page 2
Case 3:20-cv-00119-JWS   Document 54   Filed 03/30/22   Page 9 of 13

finding that the agreement did not require application of foreign law and plaintiff failed to otherwise establish that the foreign arbitrators could not consider U.S law and provide adequate relief. Moreover, the court explained that if an applicable U.S. statutory remedy was not applied or awarded in international arbitration, the plaintiff later could move to set aside the arbitration award in a U.S. federal court under the Convention. Indeed, "at the arbitration-enforcement stage, it is generally premature to make findings about how arbitrators will conduct the arbitral process, whether a claim will be heard, or whether the foreign-law remedies will be adequate or inadequate."[27] Such questions are more appropriately reserved for any review of the arbitral award.

As the Eleventh Circuit concluded after a thorough analysis on the applicable Supreme Court law, foreign choice of law clauses may be enforced even if the substantive law applied in arbitration potentially provides reduced remedies or fewer defenses than those available under U.S. law.[28] That is to say, international arbitration agreements that explicitly require the application of foreign law will not be deemed null and void any time a plaintiff raises a U.S. statutory claim. Instead, issues of public policy would be implicated only at the enforcement stage if foreign arbitration not only forces a plaintiff to waive a U.S. statutory claim, but also forecloses the possibility of any relief whatsoever and thus any opportunity for subsequent review.

---

[27] *Lindo*, 652 F.3d at 1277 (discussing the Supreme Court's holding in *Vinmar Seguros y Veaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540 (1995)).
[28] *Lindo*, 652 F.3d at 1269.

*Malin, et al. v. Osprey Underwriting Agency Ltd.*     Case No. 3:20-cv-00119-JWS
Order on Motion to Dismiss or Stay and Compel Arbitration (Docket 40)     Page 2
Case 3:20-cv-00119-JWS    Document 54    Filed 03/30/22    Page 10 of 13

Plaintiffs do not face the risk of foregoing a statutory claim and its remedies because their complaint raises claims for breach of contract and bad faith. This is not a Jones Act case. Plaintiffs settled their Jones Act claims with the defendants in the underlying case "in a purported exchange for a different set of rights" under the defendants' insurance policy.[29] Even if the Jones Act remedies were implicated here, the contractual claim provides Plaintiffs with the possibility of relief and subsequent court review.

Plaintiffs stress that they will not be able to assert a bad faith claim or recover punitive damages under English law. Again, however, unless some statutory right is threatened to be nullified, there is no public policy at stake that could outweigh "the emphatic federal policy in favor of arbitral dispute resolution" that "applies with special force in the field of international commerce."[30] Moreover, less favorable remedies or reduced defenses are not adequate justifications for setting aside the Convention's mandate to enforce agreed-upon arbitration provisions. That is to say, it is premature at the enforcement stage to consider the adequacy of any foreign law remedy. To rule otherwise and find an arbitration agreement invalid at the outset whenever the application of foreign law may be less favorable to a plaintiff would "effectively eviscerate the mutually binding nature of the Convention."[31] "[I]f every country refused to recognize arbitration agreements that contemplate the application

---

[29] Docket 53 at 8.
[30] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).
[31] *Lindo*, 652 F.3d at 1284.

*Malin, et al. v. Osprey Underwriting Agency Ltd.*  Case No. 3:20-cv-00119-JWS
Order on Motion to Dismiss or Stay and Compel Arbitration (Docket 40)  Page 2
Case 3:20-cv-00119-JWS   Document 54   Filed 03/30/22   Page 11 of 13

of foreign law, the multilateral commitment of the Convention" and its goal of ensuring uniform enforcement of international arbitration agreements would be obstructed.[32]

Plaintiffs argue that enforcement of English arbitration would otherwise be unfair given Alaska's interest in this case and the convenience of resolving this dispute in Alaska. This argument is without support. The case they rely upon does not involve enforcement of a forum-selection clause in an international arbitration agreement covered under the Convention.[33] Plaintiffs have not cited a case to support its proposition that an arbitration provision requiring foreign arbitration and the application of foreign law can be found unenforceable under the Convention based upon general notions of increased fairness, local interest, and convenience.

### IV. CONCLUSION

Based on the preceding discussion, Defendants' motion to compel arbitration at docket 40 is GRANTED. The parties are ordered to arbitrate this dispute in England as provided for in the Policy. Given arbitration is compelled and all issues are referred to arbitration, this case is DISMISSED, subject to any action to enforce or set aside the arbitral award.

---

[32] *Id.* (citing *Mitsubishi*, 473 U.S. at 639 n.21); *see also Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974) ("The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.").

[33] *Boston Telecomms. Grp. v. Wood*, 588 F.3d 1201 (9th Cir. 2009).

*Malin, et al. v. Osprey Underwriting Agency Ltd.*  Case No. 3:20-cv-00119-JWS
Order on Motion to Dismiss or Stay and Compel Arbitration (Docket 40)  Page 2
Case 3:20-cv-00119-JWS   Document 54   Filed 03/30/22   Page 12 of 13

IT IS SO ORDERED this 30th day of March, 2022, at Anchorage, Alaska.

*/s/ John W. Sedwick*
JOHN W. SEDWICK
Senior United States District Judge

*Malin, et al. v. Osprey Underwriting Agency Ltd.*     Case No. 3:20-cv-00119-JWS
Order on Motion to Dismiss or Stay and Compel Arbitration (Docket 40)     Page 2
Case 3:20-cv-00119-JWS    Document 54    Filed 03/30/22    Page 13 of 13